UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| EDDIE LEE TRAVIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 7:09-CV-00146 |
| | ) | |
| CHEVRON FAST & EASY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

MEMORANDUM OPINION

I.    Introduction.

The Court has for consideration Defendant Chevron Fast & Easy's ("Fast & Easy") Motion for Summary Judgment, which was filed on August 31, 2009. (Doc. 13.) Plaintiff Eddie Lee Travis sued Fast & Easy for violations of Title VII allegedly resulting in Plaintiff's constructive discharge. (Doc. 4.) Defendant has moved for summary judgment on all of Plaintiffs' claims. (Doc. 13.) The issues raised in Defendant's Motion for Summary Judgment have been briefed by the Parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented,

Defendant's motion is due to be granted.

II.   Facts.[1]

Defendant Fast & Easy operates a chain of gas stations/convenience stores in and around Tuscaloosa, Alabama.  Plaintiff Eddie Lee Travis was employed as a cashier at Defendant's store on Mallisham Parkway in Tuscaloosa from February 26, 2008, until he resigned on or about July 3, 2008.

When he was hired, Plaintiff understood that his duties as a cashier would include tasks other than operating the cash register in the store. These other duties included stocking shelves, emptying garbage, cleaning the gas pumps, cleaning the parking lot, and cleaning the store itself. Female cashiers at Fast & Easy also stocked shelves and performed cleaning tasks.  Had Plaintiff been assigned to a stocker schedule rather than a cashier schedule, his hours and pay would have remained the same.

---

[1]The facts set out in this opinion are gleaned from the Joint Status Report (Doc. 19), the Parties' submissions of facts claimed to be undisputed, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff was assigned specifically to "stock" duty once while in Defendant's employ: on July 5, 2008. When Plaintiff saw the schedule assigning him to stock duty, he chose to resign his position at Fast & Easy.

III.   Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party. *Id.*

at 251, *quoting Wilkerson v. McCarthy,* 336 U.S. 53, 62 (1872). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV.  Discussion.

Plaintiff alleges that (1) he was subject to racial and gender discrimination by Defendant; (2) Defendant's acts of discrimination unlawfully subjected Plaintiff to a hostile work environment; and (3) these acts of discrimination by Defendant resulted in Plaintiff's constructive discharge. (Doc. 4.)

A.  Discrimination.

Plaintiff claims that Defendant discriminated against him under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e-2(a)*, by asking him on several occasions to undertake tasks that other employees, usually female employees, were not asked to do. Plaintiff has presented no direct evidence of discrimination, such as a statement from one of his superiors plainly demonstrating that he was being treated differently because of his

gender or race. Because Plaintiff has shown no direct evidence of discrimination, he must rely on circumstantial evidence. Plaintiffs relying on circumstantial evidence use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Sledge v. Goodyear Dunlop Tires N.A., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff is able to do so, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory" rationale for the employer's action. If the employer meets this burden, the plaintiff has the opportunity to show that the employer's proffered rationale is in fact pretext for illegal discrimination. *Id.* at 802-804.

The plaintiff may establish a prima facie case of discrimination by proving:

   (1) That he is a member of a class protected by Title VII;

   (2) That he was qualified for the position or benefit sought;

   (3) That he suffered an adverse employment action; and

   (4) That his employer treated similarly situated employees outside his

classification more favorably.

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

In this case, Defendant has conceded the first and second elements: that Plaintiff was a member of a protected group and that he was qualified for the position sought. We thus turn our attention to the third and fourth elements.

      1.    Adverse Employment Action.

Plaintiff claims that he suffered an adverse employment action when he was asked by his employer to complete tasks such as stocking and cleaning that other cashiers, primarily female cashiers, were not asked to do. In the Eleventh Circuit, in order to establish an adverse employment action, a plaintiff must establish an "ultimate employment decision" or other "substantial" conduct affecting the plaintiff's employment. *Crawford,* 529 F.3d at 970. Ultimate employment decisions include termination, failure to hire, and demotion. *Id*. In order to constitute an adverse employment action, conduct not rising to the level of an ultimate employment decision nevertheless must substantially "alter[] the

employee's compensation, terms, conditions, or privileges of employment, deprive[] him or her of employment opportunities, or adversely affect[] his or her status as an employee." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (internal citation omitted).  The threshold of substantiality required for an employer's conduct to rise to the level of an adverse employment action is not low: any change in the terms, conditions, or privileges of employment must be "serious and material." *Crawford*, 529 F.3d at 970-71, *citing Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).  It is clear "that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis*, 245 F.3d at 1238.  Title VII "is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Gupta*, 212 F.3d at 587 (internal quotation omitted).

   Plaintiff simply has presented no evidence that he experienced any adverse employment action as a result of unlawful discrimination or otherwise.  Plaintiff acknowledged that being assigned to the "stocker" schedule would not have impacted his pay or hours, both of which would have remained the same as when he worked a "cashier" schedule.  Pl. Dep.

at 66-67.  Nor were the terms, conditions, or privileges of Plaintiff's employment affected in any material way.  Plaintiff understood when he accepted the cashier position that in addition to working the cash register, he would be expected to complete other tasks related to the "routine" of running a gas station, including stocking, emptying garbage, cleaning the gas pumps, cleaning the parking lot, and cleaning the interior of the store.  Pl. Dep. at 42, 45-46.  Being assigned to "stocker" duty on one occasion did not reflect a change in the terms of Plaintiff's employment, but simply an allocation to Plaintiff of a task that clearly fit within his recognized duties as a Fast & Easy cashier.

From his deposition testimony, it is clear that Plaintiff's primary complaint is not that he was asked to do stocking work, but rather that he was listed as a "stocker" on the schedule.  Plaintiff did not mind doing stocking work, which he recognized was part and parcel of his duties as a Fast & Easy cashier.  Plaintiff even said of stocking, "I loved that part of my job, putting up stock every Monday and Thursday, in the cooler and out in the store…I was always schedule on that day, on stock day, so that was part of the routine, stocking up the store."  Pl. Dep. at 45-46.

Rather, what bothered Plaintiff was that Fast & Easy had written the word "stocker" next to his name on the work schedule. Fast & Easy "could have gave me the same schedule and not put 'stocker' by there. He could have gave me the same exact schedule and not put 'stocker,' then I would have been happy." Pl. Dep. at 65. Plaintiff explained that as a college-educated man, he was offended by being given the title "stocker" on the work schedule: "That's what I was unhappy with, the word...It was written on there. I was doing the work anyway. Why have you got to give me the title?" *Id.* at 66.

Even though Plaintiff is unhappy with the wording on the schedule – that is, having the word "stocker" or "stock" written on the schedule for one particular day or series of days to describe the work Plaintiff was expected to do on those days – such does not amount to a "serious or material" change in the terms of Plaintiff's employment. It is clear in the Eleventh Circuit that "[i]n the vast majority of instances...an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by [Title VII]." *Davis*, 245 F.3d at 1245. This is especially true where "the work

assignment at issue is only...temporary and does not affect the employee's permanent job title or classification." *Id*. In this case, Plaintiff did not experience any "tangible harm" –- his pay and hours were not affected, and his job title remained the same. Even if Plaintiff "felt some blow to his professional image," he simply has not shown any material harm caused by his work assignment. In interpreting and applying Title VII, the federal courts do not "sit as a super-personnel department that reexamines an entity's business decisions." *Id.* at 1244, *quoting Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Because the actions alleged by Plaintiff do not constitute an adverse employment action, Plaintiff is unable to establish a prima facie case of discrimination in violation of Title VII.

    2.    Similarly Situated.

Even if Plaintiff had suffered an adverse employment action, he is still unable to make out a prima facie case because he is unable to show that Fast & Easy treated similarly situated employees outside of Plaintiff's protected class more favorably than Plaintiff was treated. Plaintiff has not presented any evidence demonstrating that he suffered from a differential application of Fast & Easy's rules or that he was treated less favorably than

other employees who were not black males.  Plaintiff claims that he was routinely asked to do work that the female cashiers were not asked to do, such as stocking and cleaning.[2]  It is undisputed, however, that these tasks were encompassed by Plaintiff's duties as a Fast & Easy cashier.  Plaintiff deposed two female employees who worked at Fast & Easy at the same time he did.  Both women stated that they did stock work at the store.  Deponent Kimberly Hinton, who worked with Plaintiff during her training as a cashier, stated of all Fast & Easy cashiers: "We do stocking; we do shelves; we do inside, outside cleaning, consist of the bathrooms.  Nobody had any certain things that was just pointed out to one person.  Everybody did the same thing."  Hinton Dep. at 9.  Further, Plaintiff's own deposition testimony suggests that to the degree he may have done more stocking or cleaning than some of his female co-workers, the reason for the disparity lay in his own chivalrous offers to do such work while the women operated the cash registers.

---

[2] In his Amended Complaint (Doc. 4), Plaintiff alleges that he was subject to both racial and gender discrimination.  However, in his Response to Defendant's summary judgment motion, Plaintiff's arguments all center on gender discrimination.  In addition, Plaintiff has failed to cite any facts or produce any evidence supporting a racial discrimination claim.

For instance, Plaintiff stated that one woman who was hired as a stocker, Nancy, would work as a cashier while Plaintiff, who was hired as a cashier, did stock work.  But Plaintiff went on to explain that the women would often work the cash register while he stocked not because of a manager's explicit instruction, but because Plaintiff would yield to the women's requests that he let them work the register.  "I usually got off and yield to the ladies, let them get on the cash register...That was my decision...I did that all the time.  When the girls came on, I would let them get the register."  Pl. Dep. at 51.  One night when Nancy came in, Plaintiff refused to let her work the register, pointing out to her that she was scheduled as a stocker.  *Id*. at 50-51.  Nancy quit her job at Fast & Easy after that night, but there is no suggestion that Plaintiff's conduct in refusing to yield the register to her was in any way unacceptable or inappropriate. Plaintiff may feel that his female co-workers took advantage of his occasional willingness to let them perform the tasks they preferred to perform, but the fact appears to be that Plaintiff did a greater proportion of the stocking work than the female workers because he volunteered to take on that work--not because Fast & Easy discriminated against him on the

basis of his race or gender.[3]  Because Plaintiff has not established a prima facie case of discrimination, summary judgment is due to be granted to Fast & Easy on this claim.

B.   Hostile Work Environment.

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21

---

[3] Plaintiff testified regarding a couple of specific instances where he was asked by management to do things his female co-workers were not asked to do: Plaintiff was sometimes asked to clean the manager's office and to complete other, non-cash register tasks such as sweeping the parking lot.  Pl. Dep. at 47-48, 53-54.  However, because these tasks were within Plaintiff's job description, his being asked to carry them out on certain occasions cannot be considered a differential application of work rules.

Even assuming, however, that such conduct did constitute differential treatment, and assuming that the other conditions necessary to establish a prima facie case were met, Plaintiff's own deposition testimony demonstrates that Fast & Easy had legitimate, non-discriminatory reasons for asking Plaintiff to complete these tasks.  Plaintiff stated that he was only asked to clean the manager's office because he had prior experience with such tasks and knew what they entailed: "I didn't complain that much because he only did it because he knew I knew how to do it...I had experience." Pl. Dep. at 47-49.  Plaintiff thought stockers should have been doing the tasks he was asked to do, but admits that the stocker who worked the same time as Plaintiff "was not very good, and I ended up doing most of his work because I knew how." Pl. Dep. at 49.  If Fast & Easy management asked Plaintiff, rather than other employees, to complete certain tasks within Plaintiff's job description because Plaintiff was best-qualified to do those tasks, rather than because of Plaintiff's race or gender, then Plaintiff's discrimination claim must fail.  Plaintiff has offered no evidence showing that Fast & Easy's legitimate rationale for allocating certain tasks to Plaintiff was mere pretext for unlawful discrimination.

(1993) (internal quotations omitted). Defendant contends that none of the actions alleged by Plaintiff rise to the level of intimidation, ridicule, or insult required. (Doc. 14.) The Court agrees.

The requirement "that the conduct complained of was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment'[] is the element that tests the mettle of most sexual harassment claims." *Gupta*, 212 F.3d at 583, *quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In this circuit, there are four factors that should be considered in determining whether conduct is sufficiently severe or pervasive: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Corbitt v. Home Depot U.S.A.*, 573 F.3d 1223, 1240 (11th Cir. 2009), *citing Harris*, 510 U.S. at 23. This Court "should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working

environment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

In this case, Plaintiff has failed to present material proof of any discriminatory conduct, much less "severe and pervasive" discriminatory conduct. As discussed earlier, Plaintiff's deposition testimony and other evidence indicate that any stocking and/or cleaning work done by Plaintiff was part of his employment duties as a Fast & Easy cashier. Neither Plaintiff's hours nor his pay were affected by which specific tasks were assigned to him on a day-to-day basis. Further, to the extent Plaintiff may have done proportionally more stocking and/or cleaning work than his female co-workers, that disparity was primarily due to Plaintiff's own action in volunteering to complete tasks the female cashiers preferred not to complete. At all times, however, Plaintiff did work that his position as a Fast & Easy cashier required him to do.

Because Plaintiff has presented no facts showing unlawful discriminatory conduct, there is no possibility that any such conduct was severe or pervasive. Plaintiff was offended that, given his level of education, he was listed as a "stocker" on one work schedule. Fast & Easy's

conduct in listing Plaintiff as a "stocker" is not actionable under Title VII, but even if it were, at most it would be a "mere offensive utterance" not rising to the level of "severe and pervasive" discriminatory conduct. Plaintiff has failed to present facts in support of his allegation of a hostile work environment. Summary judgment is thus due for Defendant on this claim.

C. Constructive Discharge.

Finally, Plaintiff alleged that discriminatory treatment by Fast & Easy resulted in Plaintiff's constructive discharge. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003), *quoting Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997).

Plaintiff's deposition testimony reveals that the reason he quit his job was because he was offended by being called a "stocker" on Fast & Easy's work schedule. When asked why he quit, Plaintiff responded, "Because I saw the schedule, and he had me down three days as a stocker. Before, I

was stocking, but I wasn't scheduled as a stocker. That was the last straw...." Pl. Dep. at 62. As noted above, Fast & Easy's action in calling Plaintiff a "stocker" on the work schedule does not constitute unlawful discrimination.

Even if Plaintiff's cumulative anger and frustration at being asked to do tasks such as stocking and cleaning led to his resignation, his constructive discharge claim would fail. Because Plaintiff was only asked to do tasks that fell within the ambit of his duties as a cashier, he was not discriminated against by being assigned these tasks. Certainly Plaintiff has not alleged any facts indicating that the conditions of his employment were "so intolerable" that a reasonable person in his position would have felt compelled to resign. Therefore Plaintiff's claim for constructive discharge must fail as a matter of law.

V.   Conclusion.

Having considered Plaintiff's allegations, it is apparent to this Court that the evidence is insufficient to create a jury question as to whether Plaintiff suffered unlawful discrimination, a hostile work environment, or constructive discharge. Therefore, Fast & Easy's motion for summary

judgment is due to be granted.  A separate order will be entered.

Done this 21st day of December 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE